UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL TAYLOR, *et al.*,

        Plaintiffs,

v.

COUNTRYWIDE HOME LOANS,
*et al.*,

        Defendants.

_____/

Case No. 08-13258

Stephen J. Murphy, III
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**DEFENDANT MILLER'S MOTIONS TO DISMISS (Dkt. 98) AND**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT(Dkt. 107, 108)**

## I. PROCEDURAL HISTORY

Plaintiffs filed a complaint against defendants on July 29, 2008. (Dkt. 1).

In lieu of a responsive pleading, defendants filed a motion to dismiss on August

18, 2008. (Dkt. 5). Plaintiffs then filed a motion for leave to file an amended

complaint on August 21, 2008. (Dkt. 6). On September 15, 2008, District Judge

Stephen J. Murphy, III referred this matter to the undersigned for all pretrial

purposes. (Dkt. 12).

On September 30, 2008, the Court granted plaintiffs' motion for leave to

amend their complaint, and directed plaintiffs to file their amended complaint

within 14 days of entry of that Order. (Dkt. 17). On October 3, 2008, plaintiffs

filed their amended complaint, which is entitled "third amended complaint." (Dkt.

1

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

20).  Defendant Countrywide filed its answer to the third amended complaint on October 27, 2008.  (Dkt. 22).  Defendant Miller filed its answer to the third amended complaint on October 28, 2008.  (Dkt. 25).

On April 10, 2009, defendant Miller filed a motion to dismiss count I of the third amended complaint.  (Dkt. 98).  Plaintiff filed a response on May 11, 2009.  (Dkt. 120).  On April 14, 2009, defendant Miller also filed a motion for summary judgment, to which plaintiffs responded on May 11, 2009.  (Dkt. 107, 119).  Countrywide filed a motion for summary judgment on April 14, 2009.  (Dkt. 108).  Plaintiff filed a response on May 11, 2009.  (Dkt. 118).  The Court held a hearing on these motions on January 19, 2010.  These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

## II.    PLAINTIFF'S THIRD-AMENDED COMPLAINT

The third amended complaint is the controlling complaint and is the subject of defendant Miller's motion to dismiss.  (Dkt. 20).  As to defendant Miller, plaintiffs allege that it violated the Fair Debt Collection Practices Act (FDCPA).  Plaintiffs allege that their first contact with Miller was on September 7, 2008, when the person renting the subject property gave plaintiffs the publication notice of

2

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

foreclosure sale that had been placed on the front door of the property. Plaintiff

Daniel Taylor called Miller and spoke with attorney Ray Scodeller, who allegedly

told him that a letter had been sent to plaintiffs informing them of Miller's

relationship with Countrywide. Plaintiff denies receiving any such letter. Mr.

Taylor informed Mr. Scodeller that the matter with Countrywide was being

litigated. On September 11, 2008, plaintiffs faxed Mr. Scodeller a formal notice

that the debt was being disputed and requested verification from Miller of the debt.

Plaintiffs' further alleged that Miller never provided any validation of the debt and

that Miller continued its collection practices after receiving notice of the debt,

contrary to the FDCPA. In their complaint, plaintiffs identify two communications

from Countrywide, which are apparently the improper "collection" activity for

which it blames Miller. (Dkt. 20, Count I).

In the third amended complaint, plaintiffs allege that Countrywide did not

fully disclose the loan terms to plaintiffs in that the amortization sheet was

inconsistent with plaintiffs' calculations based on the TILA disclosure. (Dkt. 20, ¶

31). Plaintiffs also claim that Countrywide breached the loan agreement by

unilaterally paying the overdue taxes before they were due under the notice of

property tax delinquency. (Dkt. 20, ¶ 33). Plaintiffs also allege that Countrywide

breached the waiver of escrow by setting up the escrow account after paying the

delinquent property taxes. (Dkt. 20, ¶¶ 34-36). Plaintiffs assert that

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

Countrywide's increase of their mortgage payment to cover the escrowed delinquent taxes violated the loan agreement. (Dkt. 20, ¶ 40). Plaintiffs claim that Countrywide's action extended the statute of limitations on their right to rescind. (Dkt. 20, ¶ 41).

Plaintiffs also make claims for "lender liability" that sounds in fraud and breach of the covenant of good faith and fair dealing. (Dkt. 20, ¶ 42, pp. 8-10). Specifically, plaintiffs claim that Countrywide committed fraud by falsely representing that it would waive the escrow and failing to notify plaintiffs before it paid the delinquent taxes. *Id*. Additionally, plaintiffs claim that Countrywide's alleged failure to notify them before paying the delinquent taxes breached the covenant of good faith and fair dealing because Countywide exercised its discretion to pay the delinquent taxes and establish an escrow in bad faith. *Id*.

Finally, plaintiffs allege that Countywide committed violations of RICO based on its fraud and claim that Countrywide is vicariously liable for the acts of a former employee who stole plaintiffs' confidential personal information. (Dkt. 20, pp. 10-11). Plaintiffs also attached several exhibits to their third amended complaint, including the notice of foreclosure, a letter from plaintiffs disputing the debt, a September 15, 2008 letter from Countrywide to plaintiffs, a letter from Countywide's counsel dated September 22, 2008, a quitclaim deed dated February 14, 2006, a notice of property tax delinquency, plaintiffs' mortgage interest

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

4

statements for 2006 and 2007 and itemization of amount financed, and a letter from Countrywide to plaintiffs dated September 6, 2008. (Dkt. 20).

## III.  STATEMENT OF FACTS

These facts, as set forth in the motions for summary judgment, are largely undisputed.  Daniel and Diane Taylor received a loan from Countrywide Home Loans on November 30, 2005.  The loan was a refinancing of their existing mortgage on property located at 12230 Lansdowne Street in Detroit, Michigan (the "Property").  On November 30, 2005, Daniel and Diane Taylor signed many documents, including: the Mortgage, the Adjustable Rate Note, the Adjustable Rate Rider, the Truth in Lending Disclosure, the Variable Rate Disclosure, the Notice of Right to Cancel, and the Itemization of Amount Financed.

According to their sworn deposition testimony, Diane and Daniel Taylor bought and moved into their current residence at 35639 Rainbow Drive in November 2005.  While plaintiffs disputed this at the hearing, they have offered no admissible evidence that contradicts their sworn depositions.[1]  Notably, the Mortgage required plaintiffs to occupy the property as their principal resident for at least one year from the date of the November 30, 2005 closing.  Stephanie Wilson,

---

[1] Even if plaintiffs had offered affidavits stating as such, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

5

plaintiff's daughter, resided in the home from approximately February 2005 to February 2007. From February 2005 to February 2006, she paid rent to plaintiffs. Plaintiffs quitclaimed the Property to Ms. Wilson on February 14, 2006. At that time, Ms. Wilson entered into an agreement with plaintiffs that she would make all payments on the mortgage. Eventually, Stephanie Wilson was unable to make the increased monthly payments (monthly payments increased every six months under the adjustable rate mortgage note) and she vacated the Property. On January 19, 2007, Ms. Wilson quitclaimed the Property to Mr. Taylor. Under the terms of the Mortgage, in the event that either Daniel and Diane Taylor transferred an interest in the Property without written authorization from Countrywide, Countrywide could require immediate payment of "all sums secured by" the Mortgage.

In March 2007, another renter moved into the Property. That renter still resides at the Property and pays $828 a month in rent to plaintiffs. It was plaintiffs' responsibility to pay property taxes on the Property (and they understood that this was their responsibility), but they have never made any property tax payments on the Property. Under the terms of the Mortgage, in the event that plaintiffs failed to pay the amounts due for property, Countrywide had the right to pay the property taxes and plaintiffs would then be obligated to repay Countrywide the amounts paid:

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

Borrower's obligation [to pay property taxes] and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument * * *. If Borrower is obligated to pay [property taxes] directly * * * and Borrower fails to pay the amount due for [property taxes], Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amount, that are then required under this Section 3.

On November 1, 2007, Countrywide claims that it sent a letter to plaintiffs informing them that the property taxes on the Property were delinquent and warning that if Countrywide did "not receive satisfactory evidence that the taxes have been paid within thirty (30) days" Countrywide may "pay all delinquent taxes owed, including penalties, interest and/or fees, as well as any taxes due within forty-five (45) days to protect its interest in the property." The letter went on to warn plaintiffs that if Countrywide paid the property taxes, it would then "establish an escrow/impound account at the time of the disbursement which will remain in effect thereafter to insure the timely payment of future taxes." Countrywide has not produced a copy of the actual letter sent to plaintiffs and have indicated that copies of such letters are not maintained. Rather, Countrywide has offered an affidavit explaining the computerized notation that such a letter was sent to

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

plaintiffs on that date and have produced a copy of the form letter used. Plaintiffs'
dispute receiving this letter and further dispute that Countrywide's proffered
evidence that this letter was sent is sufficient. Pursuant to the terms of the
Mortgage, a notice is "deemed to have been given to Borrower when mailed by
first class mail... ." Nothing in the Mortgage requires that the Borrowers
(plaintiffs), actually receive notice for notice to have been given. Notably, neither
plaintiffs nor their daughter resided at the Property when this letter would have
been sent to the Property address. Countrywide did not receive any response to the
November letter. On December 12, 2007, Countrywide paid $5,324.13 in property
taxes on the Property.

On July 29, 2008, plaintiffs filed their original complaint against defendants
Countrywide Home Loans and America's Wholesale Lender. After accelerating
the defaulted mortgage debt, Countrywide Home Loans referred plaintiffs'
mortgage to Randall S. Miller & Associates, P.C. to initiate a foreclosure by
advertisement on or about August 14, 2008. (Dkt. 107, Ex. 5). On August 14,
2008, Miller received the referral, opened the file and sent a letter to plaintiffs
advising them of the foreclosure. (Dkt. 107, Ex. 6). On September 11, 2008,
Miller was contacted by Mr. Taylor who first advised Miller's office about the
pending litigation. Miller subsequently received a letter with information about the
pending litigation and disputing the mortgage debt. Miller sent a letter to plaintiffs

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

8

with a purported debt validation and informing them that the Sheriff's sale never took place and that the foreclosure was cancelled due to this pending litigation. (Dkt. 107-9). On October 3, 2008, plaintiffs filed their "Third Amended Complaint," which added as Count I, a claim against Randall S. Miller & Associates, P.C. a claim for violation of the FDCPA.

As of September 11, 2008, the date Miller employees first spoke to plaintiff Daniel Taylor, Miller has made no further attempts to collect the mortgage debt. (Dkt. 107-13; Daniel Taylor's dep, p. 142). Since being served with the third amended complaint, Miller responded to plaintiffs' dispute letter on October 23, 2008 but has not proceeded with the foreclosure by advertisement. (Dkt. 107-7, acceleration letter; 107-11, Daniel Taylor dep, p. 135).

## IV.   DISCUSSION

### A.    Standards of Review

#### 1.    Motion to dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

9

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, quoting, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie*, *2.

10

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

Where a plaintiff is proceeding without the assistance of counsel, the court is still required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *See e.g. Simmons v. Caruso*, 2009 WL 2922046 (E.D. Mich. 2009), citing, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

### 2. Summary judgment

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

> production, the non-moving party cannot rest on its
> pleadings, but must present significant probative
> evidence in support of the complaint to defeat the motion
> for summary judgment. The mere existence of a scintilla
> of evidence to support plaintiff's position will be
> insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th

Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on
> personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant is
> competent to testify on the matters stated. If a paper or
> part of a paper is referred to in an affidavit, a sworn or
> certified copy must be attached to or served with the
> affidavit. The court may permit an affidavit to be
> supplemented or opposed by depositions, answers to
> interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held

"that documents submitted in support of a motion for summary judgment must

satisfy the requirements of Rule 56(e); otherwise, they must be disregarded."

*Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56

motion, the Court should not consider unsworn or uncertified documents, *Id.*,

unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969

(6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co.*

*v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v.*

*Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222,

225-226 (6th Cir. 1994). *See Tolliver v. Federal Republic of Nigeria*, 265

F.Supp.2d 873, 879 (W.D. Mich. 2003). Thus, "[a] party opposing a motion for

summary judgment cannot use hearsay or other inadmissible evidence to create a

genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of*

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

13

*Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

B.   The Truth in Lending Act

TILA's purpose is twofold:  to facilitate the consumer's acquisition of the best credit terms available and to protect the consumer from divergent and at times fraudulent practices stemming from the uninformed use of credit.  *See Mourning v. Family Publication Service, Inc.*, 411 U.S. 356, 363 (1973).  TILA is a remedial statute and should be construed liberally in favor of the consumer.  *Bizier v. Globe Financial Services, Inc.*, 654 F.2d 1, 3 (1st Cir. 1981).  "To insure that the consumer is protected, the TILA and the regulations must be absolutely complied with and strictly enforced."  *Greene v. Benefit Mortgage Corp.*, 2009 WL 56056, *8 (E.D. Mich. 2009), citing, *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983).  "Even technical or minor violations of the TILA imposes liability on the creditor."  *Greene*, at *8, citing, *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989).

TILA does not apply to every residential mortgage transaction.  Rather, it provides a right to rescind for all "consumer credit transaction[s] ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended ...."  15 U.S.C. § 1635.  Indeed, the definition of mortgage in TILA is limited to "consumer credit

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

14

transaction[s] that [are] secured by the consumer's principal dwelling ... ." 15

U.S.C. § 1602(aa). TILA specifies that it "exempts credit transactions other than

those where the security interest relates to real property to be used as the

borrower's principal dwelling." *LaPorte v. Countywide Home Loans*, *Inc.*, 2009

WL 2905934 (E.D. Tenn. 2009), citing, *LaPorte v. Wells Fargo Bank*, *N.A.*, 2009

WL 2146324, at *3 (E.D. Tenn. 2009); *see also Bell v. SunTrust Mort.*, *Inc.*, 2009

WL 2913690 (E.D. Tenn. 2009). Thus, if a transaction is not secured by the

borrower's principal dwelling, the transaction is not covered under TILA.

In this case, plaintiffs admitted, under oath, acquiring and moving into their

current home in Sterling Heights in November 2005. Therefore, when plaintiffs

entered into the Mortgage on November 30, 2005, the Property was no longer their

principal dwelling. Since the Property was not their principal dwelling, TILA did

not apply to the transaction. For this reason, the undersigned suggests that

summary judgment in favor of Countywide on plaintiffs' TILA claim is proper.

C.     RICO

RICO defines a "pattern of racketeering activity" as "at least two acts of

racketeering activity." 18 U.S.C. § 1961(5). Crimes comprising "racketeering

activity" are listed under 18 U.S.C. § 1961(1) and are commonly referred to as

"predicate acts." The listed predicate acts include, among others: mail fraud (18

U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); transportation of stolen property

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countywide, et al.*; No. 08-13258

(18 U.S.C. § 2314); travel or transportation in aid of racketeering activity (18

U.S.C. § 1952); and receipt of stolen goods (18 U.S.C. § 2315). The Supreme

Court requires a RICO plaintiff do more than merely recite two predicate acts

because "there is something to a RICO pattern beyond the number of predicate acts

involved." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989).

Rather, a plaintiff must show that "the predicate acts are related and that they

constitute or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at

239. It is this notion of "continuity plus relationship" that combines to produce a

"pattern" under RICO. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th

Cir. 2006). Thus, merely pointing to two predicate acts is insufficient to meet the

pattern requirement. A plaintiff must present evidence of "continuity," which "is

both a closed- and open-ended concept, referring either to a closed period of

repeated conduct, or to past conduct that by its nature projects into the future with a

threat of repetition." *H.J. Inc.*, 492 U.S. at 241. A closed period of continuity may

be demonstrated "by proving a series of related predicates extending over a

substantial period of time." *Id.* at 242. However, "[p]redicate acts extending over

a few weeks or months and threatening no future criminal conduct do not satisfy

this requirement." *Id*. In *Moon*, the Sixth Circuit held the plaintiff failed to state a

RICO claim because he did not establish continuity. *Id*. at 719. The plaintiff's

claim was based on allegations his employer colluded with an insurance provider

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

and a physician to deny him workers compensation benefits.  The court found that, even though predicate acts occurring over a 30-month period may have constituted a "significant period of time," facts establishing a RICO pattern were still lacking because all of the alleged predicate acts "were keyed to [the defendants'] single objective of depriving [the plaintiff] of his benefits."  *Id*. at 725.  Where a single objective is alleged, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO."  *Id*. at 725-26.

In this case, plaintiffs third amended complaint fails to allege any predicate acts.  Rather, plaintiffs merely alleged that Countrywide committed fraud with respect to the transaction with plaintiffs, (Dkt. 20, pp. 10-11), that Countrywide was not entitled to foreclose on plaintiffs' property, that Countrywide is vicariously liable for the actions of its employee in selling personal information about plaintiffs, and that Countrywide acted on a void contract.  (Dkt. 20, p. 11).  The undersigned agrees with Countrywide that plaintiffs fail to allege or offer any evidence of any predicate acts and that the bare allegation of "money laundering" is insufficient to satisfy the predicate act requirement, which requires more than a mere recitation of two predicate acts.  *H.J.*, 492 U.S. at 238.  In addition, plaintiffs' claims are lacking because all of the alleged predicate acts "were keyed to [the defendants'] single objective of depriving [the plaintiff] of his benefits."  *Id*. at

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

725. Where a single objective is alleged, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Id.* at 725-26.

Based on the foregoing, the undersigned recommends that summary judgment be entered in favor of Countrywide on plaintiffs' RICO claims.

D.    Breach of Contract

"Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 718 (E.D. Mich. 2005), citing, *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). Plaintiffs' breach of contract claim appears to be that "Countrywide breached its fiduciary duty when it failed to notify plaintiffs that they were going to pay the summer and winter 2006 taxes which were delinquent; however, plaintiffs had three months, i.e., from December 2008 to March 1, 2008."

The undersigned suggests that Countrywide's interpretation of the Mortgage is correct and that it contains no duty by Countrywide to notify plaintiffs that it was going to pay the delinquent taxes. Plaintiffs claim that Countrywide breached the loan agreement by paying the property taxes and escrowing the amounts. However, the contract documents allow for Countrywide to pay the property taxes

18

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

if plaintiffs fail to pay them. In this case, plaintiffs failed to pay their 2006 Wayne County winter property taxes and their 2007 Detroit summer property taxes. These taxes were delinquent at the time they were paid by Countrywide. Thus, it was not a breach of the agreement for Countrywide to pay these property taxes – in fact, such action was explicitly allowed by the agreement. Plaintiff is correct that the Mortgage requires Countrywide to provide written notice if Countrywide "revoke[d] the waiver as to any or all Escrow Items at any time by notice given in accordance with Section 15." *See* Mortgage, § 3. Nothing in this provision or elsewhere in the Mortgage requires Countrywide to provide written notice that it was going to pay delinquent taxes.

In any event, Countrywide sent written notice to plaintiff indicating that it would pay the taxes if plaintiff did not so do and notifying plaintiffs that an escrow would be established to ensure payment of future taxes. Plaintiffs' breach of contract claim is based primarily on the allegation that they did not receive the letter from Countrywide regarding the delinquent taxes. The Mortgage clearly provides that notice is "deemed to have been given to the Borrower when mailed by first class mail..." and Countywide provided an affidavit stating that their records show that two letters were mailed to plaintiffs at the address of the mortgaged property. (Dkt. 108; Ex. 1, p. 8, ¶ 15; Ex. 10). In light of plaintiffs' failure to provide any evidence that Countrywide did not provide the requisite

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

notice, Countrywide is entitled to summary judgment on this breach of contract claim.

Plaintiffs also claim that Countrywide should not have paid the property taxes because there was no immediate threat of forfeiture. Countrywide argues that, even accepting this as true for the purpose of this motion, the contract documents do not require a threat of immediate forfeiture to allow Countrywide to pay the property taxes. Rather, once plaintiffs failed to pay for any amount that was due, Countrywide was allowed under the contract to pay that amount and seek reimbursement from plaintiffs as provided in Section 3 of the Mortgage, which both plaintiffs admitted signing. (Dkt. 108, p. 13, citing, deposition of Daniel Taylor, pp. 13-14, deposition of Diane Taylor, p. 12). Countrywide had no contractual obligation to wait to pay the outstanding taxes until the taxing authorities took further action on the delinquent taxes. Thus, the undersigned suggests that Countrywide is entitled to summary judgment on plaintiffs' breach of contract claim.

E.    Fraud

In its motion for summary judgment, Countrywide asserts that even if the facts alleged by plaintiffs are true, each of their four fraud theories fail as a matter of law. (Dkt. 108, pp. 13-17). Countrywide asserts that even if the loan documents were "confusing" as plaintiffs claim, plaintiffs offer no evidence that the

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

20

documents were false or that they relied on the documents, given that plaintiffs did not read the documents before they signed them. Second, even if the note was sold, as claimed by plaintiffs, no one represented to plaintiffs that it would not be sold. In absence of any "representation," no fraud could have perpetrated.

Next, Countrywide asserts that plaintiffs' theory that, by failing to send a notice to plaintiffs, Countrywide "falsified the agreement," makes no sense. And, to the extent that plaintiffs argue that Countrywide represented in the mortgage documents that it would do something that it later failed to do, this, according to Countrywide, is merely a breach of contract claim, not fraud. (Dkt. 108, p. 17). Indeed, promises of future conduct are not fraud under Michigan law. *Id.*

Plaintiffs also theorize that Countrywide committed fraud when they failed to notify plaintiffs of the payment of the 2006 delinquent taxes. Again, according to Countrywide, this allegation does not fit within the parameters of a fraud claim because the mortgage clearly provides that Countrywide was not required to provide such notice to plaintiffs and, absent a legal duty to provide such notice, no silent fraud could have occurred. (Dkt. 108, p. 17).

With respect to plaintiffs' apparent claim for breach of the covenant of good faith and dealing, Countrywide argues that there is no basis for plaintiffs' claim that Countrywide did not act in good faith. Countrywide points out that plaintiffs admit in their complaint that their property taxes were delinquent. Further, in

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

December 2007, plaintiffs still owed property taxes from winter 2006 and summer 2007. Simply, the parties' contract allowed Countrywide to pay these property taxes, which it did. Thus, according to Countrywide, there was no bad faith and, to the extent that plaintiffs have attempted to assert a claim for breaching the covenant of good faith and fair dealing, this claim must be dismissed. Countrywide further argues that there is no support in Michigan law to imply a covenant of good faith into a mortgage agreement and even if there were, plaintiffs offer no evidence of bad faith, given that Countrywide merely took actions it was authorized to take under the mortgage. (Dkt. 108, p. 18).

Under Michigan law, the elements constituting actionable fraud are:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976), quoting, *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141 (1919). If even one of these elements is absent, the plaintiff will not prevail on a fraud claim. *Id.*

Plaintiffs' fraud claims fail for several reasons. First, with respect to the alleged sale of the promissory note, plaintiffs admit that no one made any

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

representation that the note would not be sold. Even assuming that such a representation, if made, would be material, in the absence of any representation, there can be no fraud.

Additionally, plaintiffs' fraud theories based on lack of notice are merely restated breach of contracts claims. Michigan precludes a litigant from proceeding with a tort action for nonperformance of a contract. *Casey v. Auto Owners Ins. Co.*, 273 Mich.App. 388, 401, 729 N.W.2d 277 (2006); *Nelson v. Northwestern Savings and Loan Ass'n*, 146 Mich.App. 505, 509, 381 N.W.2d 757 (1985). "[T]here must be a breach of a duty separate and distinct from the duties imposed by the contract." *Nelson*, 146 Mich.App. at 509. Plaintiff has identified no such separate duty and their fraud claims fail for this reason.

Lastly, plaintiffs' claim for breach of the covenant of good faith and fair dealing, even if such a claim exists under Michigan law, is again, a mere restatement of their failed breach of contract claims. "An implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion." *Stephenson v. Allstate*, 328 F.3d 822, 826 (6th Cir. 2003), citing, *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law); *James v. Whirlpool Corp.*, 806 F.Supp. 835 (E.D. Mo. 1992) (applying Michigan law). In recognizing an implied covenant,

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

courts have sought to protect the reasonable expectations of the contracting parties. *Stephenson*, 328 F.3d at 826. Discretion arises when the parties have agreed to defer decision on a particular term of the contract. *Stephenson*, 328 F.3d at 626. Plaintiffs point to no such provision in the parties agreement that confers such discretion on Countrywide.

Moreover, a covenant of good faith and fair dealing cannot be used in the interpretation of a contract "to override express contract terms." *Stephenson*, 328 F.3d at 826-827, citing, *Cook v. Little Caesar Enter., Inc.*, 210 F.3d 653, 657 (6th Cir. 2000). Thus, when the parties have "unmistakably expressed their respective rights," the covenant does not adhere. *Hubbard*, 873 F.2d at 877; *see also Clark Bros. Sales Co. v. Dana Corp.*, 77 F.Supp.2d 837, 852 (E.D. Mich. 1999) (the implied covenant does not supersede the express terms of the parties contract and cannot form the basis for a claim independent of that contract). The undersigned suggests that plaintiffs' attempt to characterize Countrywide's conduct as "bad faith" or a breach of the covenant of good faith and fair dealing is merely an attempt to override the express terms of the parties' agreement, which included express language permitting Countrywide to take the actions about which plaintiffs' complain. Thus, the undersigned suggests that plaintiff's claims of "bad faith" fraud or breach of the covenant of good faith and fair dealing must fail.

F.    <u>Vicarious Liability</u>

24

*Report and Recommendation*
*Motion to Dismiss and*
*Motions for Summary Judgment*
*Taylor v. Countrywide, et al.*; No. 08-13258

Finally, Countrywide asserts that plaintiffs' claim for "vicarious liability" must fail because the actions of the employee at issue were not "furthering Countrywide's business." Countrywide sent plaintiffs a letter explaining that a former employee may have sold unauthorized information about plaintiffs to a third-party. Countrywide offered plaintiffs a two-year membership in Triple Advantage (a credit monitoring service) to help plaintiffs protect their credit in light of these events. However, Countrywide argues that it is not liable to plaintiffs because of its former employees actions. Under Michigan law, "[a]n employer is not liable for his employee's tortious act if the employee acts outside his employment to accomplish a purpose of his own." (Dkt. 42, citing, *Rib Roof Metal Sys. v. Nat'l Storage Ctrs. of Redford, Inc.*, 2008 U.S. Dist. LEXIS 66894 (E.D. Mich. 2008), citing, *Kester v. Mattis, Inc.*, 44 Mich.App. 22, 24; 204 N.W.2d 741 (1972)). In its motion for summary judgment, Countrywide also asserts that plaintiffs have no evidence that its former employee actually stole or sold their personal information and plaintiffs offer no evidence of any damages. They have not even pulled their credit reports to see if there is any evidence of identity theft. (Dkt. 108, pp. 24-25).

Under Michigan law, any tort claim or claim for breach of contract requires a plaintiff show, among other things, that he sustained damages as a result of the defendant's breach. *See e.g.*, *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (to

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

plead a breach of contract properly under Michigan law, a plaintiff must state three elements: (1) the existence of a contract between plaintiff and defendant, (2) a breach, and (3) damages) (applying Michigan law).  In this case, plaintiffs have admitted that they have suffered no monetary damages nor any impact on their credit report resulting from the possible (and unconfirmed) theft of any of their personal information by the former Countrywide employee.  Without any damages, this claim too must fail.

G.      Fair Debt Collection Practices Act

Defendant Miller moves to dismiss plaintiffs' claim on two grounds.  First, it asserts that it is not a "debt collector" under the FDCPA because foreclosure by advertisement is a non-judicial contractual remedy not subject to the FDCPA.  Second, even if it were subject to the FDCPA, Miller did not violate any provision of the FDCPA.  Specifically, Miller argues that, accepting plaintiffs' allegations in the third amended complaint as true, plaintiffs fail to recite any facts that constitute a violation of the FDCPA by Miller.  Title 15 U.S.C. § 1692g(b) requires that the debt be verified before collection activity proceeds.  Here, accepting plaintiffs' allegations that a request for verification was sent to Miller, plaintiffs' claim still fails because they allege no collection activity by Miller after that request was sent.  Thus, according to Miller, there could be no violation of the FDCPA and plaintiffs

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

fail to state a claim. Miller makes similar arguments, though based on more expansive facts, in its motion for summary judgment. (Dkt. 107).

In response, plaintiff claims that Miller was in fact a debt collector and never advised plaintiffs that it was not. Plaintiff also asserts that the debt has yet to be verified, which is itself a violation of the FDCPA. Finally, plaintiff claims that if Miller was merely retained by Countrywide for the purpose of commencing a foreclosure, "no ex parte communication from Countrywide or its attorneys...should have been exchanged as a decision was made to foreclose on plaintiffs' property." (Dkt. 120, p. 15). Apparently, plaintiffs argue that Miller is responsible for communications sent by Countrywide (which plaintiffs view as collection activity) after plaintiffs requested a validation of the debt from Miller. In addition, plaintiffs argue in their response to the motion for summary judgment that the failure to cancel (rather than adjourn) the foreclosure sale until plaintiff filed the third amended complaint constitutes collection activity after the request for validation was sent. (Dkt. 119, p. 14).

Even if Miller is a debt collector under the FDCPA and even if it failed to validate the debt, plaintiff's claim still fails. Unlike the notice requirements of § 1692g(a), there are no time limits for a debt collector to validate the debt under § 1692g(b). *Purnell v. Arrow Financial Servs.*, 303 Fed.Appx. 297, 303-304 (6th Cir. 2008). In fact, "§ 1692g(b) does not require the debt collector to validate the

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

debt at all, as long as it ceases any collection activity." *Id*. at 304, citing, *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992). That is, the debt collector has a choice: it either may choose not to verify the debt and abandon its collection efforts, or it may decide to verify the debt and resume collection activities once the requested validation has been provided. *Purnell*, at 304, citing, *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). In this case, plaintiffs neither allege nor offer any evidence showing that defendant Miller took any further collection activity after receiving plaintiffs' request for validation. Plaintiffs offer no legal basis for attributing any communications by Countrywide to Miller.

Further, the undersigned is simply unpersuaded that the failure to cancel (as opposed to adjourn) the foreclosure until after plaintiffs filed suit against Miller constituted prohibited "collection activity" under the FDCPA. Section 1692g mandates that the debt "collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt ... and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." This section further provides that "[c]ollection activities and communications that *do not otherwise violate this subchapter may continue* during the 30-day period ... unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

disputed or that the consumer requests the name and address of the original creditor."  However, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  Collection activities that are barred by the FDCPA include:  (1) 15 U.S.C. § 1692d, which prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the debt"; (2) 15 U.S.C. § 1692e(5), which prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken"; (3) 15 U.S.C. § 1692e(10), which prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"; and (4) 15 U.S.C. § 1692f, which prohibits an attempt to collect "any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  Plaintiff points to no authority standing for the proposition that adjourning a foreclosure by advertisement constitutes such improper collection activity and the undersigned cannot fathom how an adjournment of foreclosure could possibly be construed as such.

Thus, the undersigned suggests that plaintiffs' only claim against defendant Miller, based on the FDCPA, fails to state a claim, or in the alternative, plaintiffs

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

have failed to establish any genuine issue of material fact and defendant is entitled to judgment in its favor.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motions be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 11, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that, on February 11, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Brian C. Summerfield and Jason R. Canvasser, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Daniel Taylor, 35639 Rainbow Drive, Sterling Heights, MI 48312 and Diane Taylor, 35639 Rainbow Drive, Sterling Heights, MI 48312.

s/Tammy Hallwood
Case Manager
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Motion to Dismiss and
Motions for Summary Judgment
*Taylor v. Countrywide, et al.*; No. 08-13258